IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**BRYCE A.**[1]

               Plaintiff,                            Civ. No. 3:24-cv-01542-CL

    v.                                        **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

               Defendant.

---

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Bryce A. ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration denying his claims for supplemental

security income benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3),

and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil

Procedure 73 and 28 U.S.C. § 636(c). For the reasons provided below, the Commissioner's

decision is affirmed.

## PROCEDURAL BACKGROUND

      On June 29, 2021, Plaintiff protectively filed an application for supplemental security

income ("SSI"), alleging disability beginning on November 1, 2020. Tr. 169-74. The claim was

denied initially and on reconsideration. Tr. 82, 92. Plaintiff requested a hearing before an

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name
of the non-governmental party or parties in this case.

denied initially and on reconsideration. Tr. 82, 92. Plaintiff requested a hearing before an

administrative law judge ("ALJ") and appeared before ALJ Vadim Mozyrsky, on October 26,

2023. Tr. 55-75. Plaintiff, along with his attorney and a vocational expert, testified at the hearing.

The ALJ found Plaintiff not disabled in a written decision issued January 19, 2024. Tr. 10-24.

The Appeals Council denied review on July 17, 2024, making the ALJ's decision the final

agency decision. Tr. 1-6. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 32 years of age on his alleged onset date and has at least a high school

education. Tr. 23. He is unable to perform his past relevant work. Tr. 22. In his application, he

alleged disability due to autism, bipolar disorder, and depression. Tr. 76.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following

series of questions:

1.  Is the claimant performing "substantial gainful activity"? 20 C.F.R. §
    404.1520(a)(4)(i). This activity is work involving significant mental or
    physical duties done or intended to be done for pay or profit. 20 C.F.R. §
    404.1510. If the claimant is performing such work, she is not disabled
    within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant
    is not performing substantial gainful activity, the analysis proceeds to step
    two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20
        C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is
        "severe" if it significantly limits the claimant's physical or mental ability to do
        basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted
        or must be expected to last for a continuous period of at least 12 months. 20
        C.F.R. § 404.1509. If the claimant does not have a severe impairment, the
        analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then
        the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment
        does not meet or equal one or more of the listed impairments, the analysis
        proceeds to the "residual functional capacity" ("RFC") assessment.

        a.      The ALJ must evaluate medical and other relevant evidence to assess
                and determine the claimant's RFC. This is an assessment of work-
                related activities that the claimant may still perform on a regular and
                continuing basis, despite any limitations imposed by his or her
                impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ
                determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R. §
        404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant
        work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is not
        disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant
        cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The

Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999) (internal citations omitted); *see also* 20 C.F.R. § 404.1566 (describing "work which exists

in the national economy"). If the Commissioner fails to meet this burden, the claimant is

disabled. 20 C.F.R. § 404.1520(a)(4)(v).  If, however, the Commissioner proves that the claimant

is able to perform other work existing in significant numbers in the national economy, the

claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since June 29, 2021, the date of his application. Tr. 12. At step two, the ALJ found that Plaintiff

had the following severe impairments: autism spectrum disorder, attention deficit/hyperactivity

disorder ("ADHD"), bipolar disorder, anxiety, depression posttraumatic stress disorder

("PTSD"), and history of cannabis and alcohol use disorder. Tr. 12. At step three, the ALJ found

that Plaintiff did not have an impairment or combination thereof that met or medically equaled

the severity of a listed impairment. Tr. 12-13. The ALJ found that Plaintiff had the RFC to

perform a full range of work with the following additional limitations:

> [H]e is limited to performing simple tasks. He is limited to
> occasional public contact. He can tolerate a few changes in a
> routine work setting. He requires supervision regarding instruction
> of new or novel tasks.

Tr. 14. At step four, the ALJ determined that Plaintiff cannot perform his past relevant work as a

greenskeeper. Tr. 22. At step five, the ALJ found that, in light of Plaintiff's age, education, work

experience, and RFC, a significant number of jobs existed in the national economy such that

Plaintiff could sustain employment despite his impairments, including such representative

occupations as: machine packager; hand packager; and cleaner II. Tr. 23. The ALJ thus found

Plaintiff was not disabled within the meaning of the Act. Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the

Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues that remand is warranted because the ALJ erred in his evaluation of Plaintiff's subjective symptom testimony, in his evaluation of the medical opinion of Jodie Butler, PMHNP, and in his evaluation of the lay witness testimony of Plaintiff's father.

## I.    Subjective Symptom Testimony

Plaintiff argues that he is unable to work due to autism, PTSD, bipolar disorder, depression, and anxiety. Tr. 58-59. At his hearing, Plaintiff stated that his social skills are lacking, that the application and interview process for jobs was overwhelming, that he sometimes needed instructions written down, and that he could not work a full eight-hour day because he gets frustrated. Tr. 60-61, 69-70. When asked about his ability to care for himself, he testified that he has no issues and that he helps with chores, such as cooking, cleaning, and grocery shopping. Tr. 62. He also testified that he can drive, though long trips sometimes cause him to panic. Tr. 64. As for treatment, Plaintiff testified that he has been on many medications, not all of them useful, and that he is currently considering moving onto other medications. Tr. 65-66. He also acknowledged

that his alcohol use is inhibiting his medications. Tr. 66. In a written statement, Plaintiff

reiterated his limited social skills and that he often misunderstands what is asked of him. Tr. 192.

He also stated that he currently stutters and struggles to get his point across when speaking. Tr.

193. While he does not need reminders, can cook and follow instructions from recipes, and

handle his hygiene and household chores, he has trouble socializing because he "can't

understand most topics, making small talk difficult." Tr. 193-94, 196. Lastly, he stated that he is

not great at handling stress or changes in routine. Tr. 198.

When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is

not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and

what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918

(9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing

court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v.

Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the

claimant's subjective symptom testimony is "supported by substantial evidence in the record,

[the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th

Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is

not an examination of an individual's character," and requires that the ALJ consider all the

evidence in an individual's record when evaluating the intensity and persistence of symptoms.

SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire

case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." *Id.* at *4.

### A. Treatment

The ALJ rejected Plaintiff's symptom testimony because the medical evidence showed

that despite consistently reporting mental health symptoms, Plaintiff's records showed a history

of non-compliance with prescribed treatment. An ALJ may reject subjective complaints where an

"unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course

of treatment" exists. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)

The ALJ properly considered the objective medical record in discounting Plaintiff's

subjective symptoms testimony. Although Plaintiff does have autism, and suffers from ADHD,

bipolar disorder, anxiety, depression, PTSD, and a history of cannabis and alcohol use disorder,

Plaintiff's records show that he not only had moments of noncompliance, but also inconsistent

treatment and getting better while on treatment. *See, e.g.*, Tr. 304, 323-24, 335-38, 373-75. For

example, in October 2019, Plaintiff had been sober for nine months, had found and retained his

job as a groundskeeper for a golf course for at least five months, and had his level of care

reduced to low level because of his successes in treatment. Tr. 323-24. In June and July 2020, he

started drinking again, reported a lack of depression and anxiety, and was drinking because

"there's no longer a negative legal consequence. Tr. 332-33, 346-52. He was also reportedly

doing "quite well" on his medications, which included Lamictal. Tr. 348. In July 2020, Plaintiff

was given six months of refills on his medication until he could establish care in Oregon, but did

not establish care until October 2021. Tr. 373-75. Upon examination, he exhibited normal mood and affect, thought content, judgment, and insight, and was deemed "stable" on his medications because they "seem to be working well." Tr. 371-72. In July 2022, he was again reported as being "stable on medications," and his Lamictal and Pristiq were continued. Tr. 398. In September 2022, he stated his medications were ineffective, yet he was stable on his medications, reported daily substance use of multiple alcoholic drinks and marijuana, and was informed that his substance use could interfere with and reduce the effectiveness of his medications. Tr. 480-96, 585. Despite this information, in January 2023, he reported continuing his substance use, and he was once again warned of the effects alcohol can have on his symptoms. Tr. 594, 600. In February, he reported self-discontinuing a medication as well as taking medication prescribed to his mother, with another assessment encouraging him to stop drinking due to its effects on his prescribed medications and his symptoms. Tr. 603. In April, he decided to stop taking medications that were keeping him stable, Lamictal and Pristiq, and was started on Naltrexone for his alcohol abuse. Tr. 467-69, 721-22. In June 2023, he reported continuing to drink multiple beers a day and that reducing his alcohol use was not a priority. Tr. 694. That same month, he reportedly sought out a new mental health prescriber because they could not meet more frequently than every two weeks, but he was informed that appointments would not be more frequent unless he was "very unstable," which he was not, and Lexapro and Propranolol were added to his medications. Tr. 465.

Given the above, along with Plaintiff's testimony that he knew his alcohol use was inhibiting his medications, yet having expressed no intention of stopping despite being able to and knowing the potential consequences, the ALJ did not err in discounting his testimony.[2]

---

[2] Because the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, this Court need not resolve any other dispute regarding the ALJ's other bases for discounting plaintiff's

**II.    Medical Opinion Evidence of Jodie Butler, PMHNP**

In the context of social security claims, a medical opinion is a "statement from a medical

source about what you can still do despite your impairment(s) and whether you have one or more

impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2); *see also Rodin v.*

*Comm'r of Soc. Sec.*, 2023 WL 3293423, at *12 (E.D. Cal. May 5, 2023) ("the revised

regulations now more narrowly define as [medical opinion] a statement from a medical source

about what a claimant can still do despite impairments"). ALJs must consider the persuasiveness

of all medical opinion evidence. The most important considerations in evaluating the

persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a).

The supportability of a medical opinion is evaluated by examining the how well the relevant

objective medical evidence and the medical source's explanation support the opinion, whereas

consistency is evaluated by examining how consistent a medical opinion is with other medical

opinions (and prior administrative findings) of record. 20 C.F.R. §§ 404.1520c(c)(1);

404.1520c(c)(2).

Jodie Butler, PMHNP, submitted a medical opinion in support of Plaintiff's disability

benefits application. Tr. 686-92. Butler opined that Plaintiff had marked to extreme limitations in

every area of functioning, from his ability to understand, remember, and carry out simple

instructions to his ability to make work judgments, to interacting appropriately with coworkers,

supervisors, and the general public, to his ability to handle changes in the workplace. Tr. 689-90.

---

testimony. Had the ALJ erred in rejecting Plaintiff's symptom testimony based on conservative treatment
or his activities of daily living, any error would be harmless. *See Carmickle v. Comm'r of Soc. Sec.*
*Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was
harmless error because the ALJ provided other valid reasons that support the ALJ's credibility
determination); *e.g. Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ
provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in
the ALJ's additional reasons for discounting [claimant's] symptom testimony [were] harmless").

She stated that her assessment was based on Plaintiff's low IQ, autism, anxiety, depression, panic attacks, and low comprehension. Tr. 691. According to Butler, Plaintiff would miss more than four days of work per month, due to his impairments. Tr. 692.

The ALJ found Butler's opinion unpersuasive. Tr. 25. To start, the ALJ noted that Butler's treating relationship was limited as the two had only been seeing each other once a month for six months. Tr. 686. The ALJ also noted that there were inconsistencies between Butler's limitations and the objective evidence. Tr. 22. For example, part of Butler's assessment was based on Plaintiff's low IQ, however testing from 2018 showed a Full Scale IQ of 103, which is in the average range, and a General Ability Index score of 113, which is in the high average range. Tr. 291. Furthermore, the ALJ discounted Butler's opinion because it was inconsistent with Drs. Boyd[3] and Kessler and other objective intellectual testing. Tr. 22. Lastly, the ALJ discounted Butler's opinion because she stated that Plaintiff "could not tolerate working 8 hr days/5 day[s] per week," and that this was an issue of claimant's disability or non-disability and therefore reserved to the Commissioner. Tr. 22, citing Tr. 687. The ALJ's conclusions are a reasonable reading of the record and supported by substantial evidence.

Plaintiff argues that Butler's treating relationship was not a valid reason to reject her medical opinion, and this Court agrees. While once a month visits over six months may not seem like much, Butler was also able to review Plaintiff's "[p]revious notes, labs, PCP charts, [and] hospital notes." Tr. 453. Therefore, her opinion was based on Plaintiff's entire longitudinal record and not only the six months of appointments. As for the ALJ's objection to Butler's

---

[3] There is no evidence in the record documenting review by a Dr. Boyd. It is possible that this was a typographical error by the ALJ, who may have intended to refer to Dr. Lloyd Wiggins, a DDS medical consultant. The ALJ considered Dr. Wiggins' opinion to be additional persuasive evidence that supports a finding of non-disability. The Court does not need to make such a logical leap, however, because the ALJ properly discounted Butler's opinion for other sufficient reasons.

opinion regarding Plaintiff's ability to work full time, her opinion was actually based on the fact

that she believed his symptoms would cause him to miss multiple days of work and was not a

conclusory statement without an explanation. *See* Tr. 687. In sum, neither Butler's treating

relationship nor her opinion on Plaintiff's ability to work were valid reasons for discounting her

opinion.

Lastly, Plaintiff argues that Butler's evaluation was based on "seemingly or possible low

IQ in combination with mood symptoms, autism, and poor comprehension," and that the ALJ

mischaracterized Butler's opinion by implying that her limitations were based solely on low IQ.

Pl.'s Br. at 5. Plaintiff, however, fails to articulate any meaningful challenge to the ALJ's

supportability and consistency findings regarding Butler's opinion. For example, while Plaintiff

points to a fuller review of the IQ testing than the ALJ, the testing still reveals conflicting

evidence with Butler's opinion, namely that Plaintiff only tested in the low average range for

sustaining attention and concentration, exerting mental control, and processing simple or routine

visual material without making errors, which does not support Butler's marked to extreme

findings in these same areas. *See* Pl.'s Br. at 5; *see also* Tr. 291, 689-90. Further review of

Plaintiff's IQ testing reveals that while he may struggle in his ability to modulate his behavior

appropriately, adjust to changes in routine, regulate his emotions, monitor social behavior,

initiate problem solving, sustain working memory, and plan and organize problem-solving

approaches, testing does not support Butler's marked to extreme limitations. Tr. 292-95. The

Court thus concludes that the ALJ adequately articulated his findings regarding the

persuasiveness of Butler's medical opinion.

## III.    Lay Witness Testimony

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id.* (citation and internal quotation omitted). "Lay witness testimony is competent evidence and cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id.* at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Plaintiff's father provided a third-party report on July 24, 2021. Tr. 204-11. In it, he stated that Plaintiff cannot handle new work environments, that he is not social or verbal around strangers, and that he has difficulty following directions and completing tasks. Tr. 204. He continued, stating that while Plaintiff takes care of his cat, he needs to be reminded to clean up after the cat, that he needs "white sound" because he is easily awakened by sound, that he does not take care of his personal hygiene and needs reminders to do so, needs reminders to take his medication, rarely completes chores and has no attention to detail, struggles completing tasks, will miss steps in written and spoken instructions, is easily frustrated and does not handle stress well, and believes that his parents will take care of him for the rest of his life. Tr. 205-11.

The ALJ found the lay witness testimony consistent with Plaintiff's allegations, but inconsistent with the examinations of Drs. Williams and Adler, observations of treatment providers, Plaintiff's treatment, and the overall record. Tr. 22. As discussed above, the ALJ properly discounted Plaintiff's allegations due to non-compliance with treatment, and properly

discounted Butler's medical opinion for inconsistency with the medical record. Furthermore, Plaintiff's own testimony, written statements, and the overall record do not support the lay witness testimony. *See e.g.,* Tr. 62, 193-98, 288, 346-52, 371, 373-75, 384, 398, 452, 467-69, 585, 594, 694. Thus, the ALJ provided reasons germane to the witness and did not err in discounting the lay witness testimony.

## ORDER

In sum, the ALJ properly discounted Plaintiff's subjective symptom testimony, the medical opinion of Jodie Butler, PMHNP, and the lay witness testimony. For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 20 day of AUGUST, 2025.

MARK D. CLARKE
United States Magistrate Judge